**FARMERS NAT. BANK OF CYNTHIANA**

v.

**McKENNEY et al.**

Court of Appeals of Kentucky.

Feb. 12, 1954.

John M. Keith, Cynthiana, for appellant.

John P. Lair, Cynthiana, for appellees.

CLAY, Commissioner.

The principal purpose of this suit is to obtain a construction of the will of W. P. McLoney who died in 1941. Neither party to this appeal objects to a portion of the judgment which decreed that a legacy bequeathed by Item III thereof had lapsed and the testator had died intestate as to a two acre tract of land.

The real difficulty in the case concerns Item IV of the will. This the Chancellor adjudged null and void.

In Item IV the testator devised a tract of land to be held in trust by appellant trustee along with residual personal property. This trust was to become effective upon the death of the testator's wife, which occurred in 1951. The will attempted to direct the payment of the income from this trust to certain parties but it failed to dispose of the corpus. Item IV in substance provided that the income should be paid in equal parts to the testator's three half sisters as long as they lived, and upon the death of each, her share should be paid to "her heirs, if any, as long as the law allows". It was further provided:

"In the event of the death of any of the above named beneficiaries, or their heirs, before the termination of this trust, the share of the one or ones so dying shall revert to my estate, the income to be paid to the survivors or survivor or their heirs."

The record shows that two of the half sisters died before the trust could become effective, one being survived by one child and the other being survived by four children. There are also grandchildren. The third half sister is still living, without children.

.The appellant trustee in bringing this suit has requested the court to advise it concerning the payment of the income from the trust fund and particularly when the trust will terminate. For such a formidable task we are given little help by counsel for the trustee (who, incidentally, appears to have drawn this will).

It is the contention of appellees that the provisions of Item IV violate KRS 381.220, which forbids the suspension of the absolute power of alienation for a longer period than during the continuance of a life or lives in being at the creation of the estate and 21 years and 10 months thereafter. It is pointed out that the rule established by this statute requires that the absolute ownership of the estate must vest within the prescribed period and that if a possible contingency would prolong such period, the attempted creation of the preceding estate or estates is void. See Saulsberry v. Saulsberry, 140 Ky. 608, 131 S.W. 491, and Letcher's Trustee v. Letcher, 302 Ky. 448, 194 S.W.2d 984.

■ Appellant's counsel, while denying that Item IV violates KRS 381.220, ventures the suggestion that its provisions may somehow be applicable in determining just how long this trust should exist. It is intimated that by using the language "as long as the law allows" the testator may have had this statute in mind. However the statute relates to the *vesting of the fee-simple title,* and, except possibly by indirection, does not purport to fix the time for the continuance of intermediate estates. See Goodloe's Trustee and Adm'r v. Goodloe, 292 Ky. 494, 166 S.W.2d 836.

■ It is contended by appellees that since there are several possibilities that the life estates in the income would extend beyond the time limitations of the statute, Item IV is void for this reason. The argument of the trustee is that the wording of the will specifically attempts to avoid this result by the reference to what "the law allows". We do not consider it necessary to explore the almost infinite possibilities with respect to the shifting estates in the income from this trust. Assuming the testator intended to avoid a continuing series of life estates which would extend beyond the time of final vesting permitted by the statute, we find the principal vice of Item IV to be such uncertainty that we cannot ascertain the true purpose or intent of the testator. Under such circumstance, we cannot give effect to this part of the will. See Winn v. William, 292 Ky. 44, 165 S.W.2d 961, and Johnson v. Johnson, 312 Ky. 773, 229 S.W.2d 743.

The testator uses the word "heirs". Did he use that word to mean the children of his half sisters, or would it include the children of deceased children? In whom did he intend the fee finally to vest? What did he contemplate would constitute "the termination of this trust"? What did he mean by "as long as the law allows"? What was intended by the provision that the income should be paid to "the survivor or their heirs"? Under the preceding literary paragraph of the will an heir apparently could be a survivor, and vice versa.

We have carefully studied this part of the will and in our opinion it contains so many alternate and uncertain provisions that we are at a loss to determine from the language used what was the true intent of the testator. If he had disposed of the corpus of the trust or devised and bequeathed the fee in his property to some ultimate beneficiary, we may have had some key to his intention. To us it appears that this will has attempted to create so many different estates in the income from the trust that a serious legal problem would develop every time a death or birth occurred in the families of his three half sisters. No court could finally determine at the present time what rights will accrue or be extinguished under Item IV of the will.

In view of the developments which have taken place since the testator's death, it appears we could more closely conform to his real intention by permitting the entire trust estate to vest "as the law allows" under the statute of descent and distribution. KRS 391.010, 391.030.

We therefore believe the Chancellor, though he may have given other reasons, correctly adjudged the controversy.

The judgment is affirmed.